CHARLES J. SCHUCK, Judge.
The matters here involved, by agreement of counsel, embrace the joint claims of Callie Mealey, administratrix of . the estate of James Clarence Mealey, deceased, and the claims of Ira Mullins, Rosa Mullins, Dairl Mullins and Irene Mullins, the two latter being minors.
It appears from the evidence that on October 29, 1939, the said James Clarence Mealy, together with the Mullins family, was riding on a certain truck owned by one George Koch, on which truck there was also a load of household goods belonging to the claimant, Ira Mullins, and that while said truck was passing over and upon the state road bridge spanning the Elk river at Elkhurst, in Clay county, West Virginia, the bridge collapsed, precipitating the truck and its occupants into the Elk river below, causing the death of the said Mealey, and injuries to the four Mullins claimants. Ira Mullins was moving his family to Elkhurst from Blue Knob, near Maysel, West Virginia, said town being located on the south side of the Elk river and requiring the crossing of the said bridge to reach the town of Elkhurst. The evidence further shows that there was a circuitous route or road which may have been used for travel from the said town of Maysel to the town of Elkhurst, but it, as evidence further shows, was inconvenient, rough, seldom used, and entailed an additional travel of some nine or ten miles between the points or places in question. It can hardly be maintained that the failure to take this second mentioned route would be negligence on the part of the said claimants, in view of all the evidence and attendant circumstances, and we are of the opinion in this regard to hold accordingly, that the failure of the claimants to take the circuitous route in question, considering its condition and location, was not negligence on their part.
The evidence shows that the bridge in question had been condemned, and that an attempt had been made by the state authorities to prevent passage or travel over the bridge, although it had to be kept open for the school children living oh *216 the south side of the Elk river and attending school at Elkhurst. The state maintains that there was a notice on the bridge to the effect that the capacity of the bridge was three tons gross load, and that to exceed this capacity would be negligence on the part of the persons using the bridge with an overload. There is a conflict as to whether or not signs showing the bridge to have been closed were properly erected to warn the traveling public of the unsafe condition of the bridge. Also, one witness says (record p. 9) that the word “closed” was the word used on the sign, while another (record p. 77) maintains that the word “unsafe” was used. In any event, we feel that the evidence fails to reveal that the proper steps were taken to effectually close the bridge to the traveling public, and that means could have been employed by virtue of which it would have been made impossible for a truck such as the one in question to have attempted to cross the bridge that collapsed. There is a conflict of testimony as to the weight of the load, namely, the truck in question together with the household furniture, and the weight of the persons who were riding thereon. A careful analysis of all of the testimony so far as the claimant case is concerned, shows that the weight of the truck, the household goods and the occupants of the truck failed to reach three tons, while, on the other hand, the evidence of the state tends to show that the combined weight of the truck; household goods and occupants, including the claimants, exceeded a three-ton load by possibly five hundred to one thousand pounds. There is also a conflict between the witnesses for the claimants and the witnesses for the state as to the actual weight of the truck at the time of the accident, and while we are inclined and have carefully weighed the evidence as given by the witnesses for the state with reference to the involved matters, we are, however, further persuaded that by the extremely rotten and decayed condition of the timbers of the bridge, as exhibited and shown in the evidence, that the bridge was incapable of holding a load of any weight much less than a three-ton load, and, therefore, should have been effectually closed to the traveling public. At least the situation presented in this regard compels us to hold that the evidence presented by the claimants and all the attendant circumstances at least favor the contention *217 of the claimants, and, at best, could only be used in charging the deceased Mealey, Ira Mullins and his wife, Rosa Mullins, with a certain degree of negligence, which has been considered by the court in making the award hereinafter set forth. Such negligence, of course, could not be charged to the minor children, Dairl Mullins and Irene Mullins.
As indicated, James Clarence Mealey was killed by reason of the injury occasioned by falling through the said bridge. He had been a carpenter, as well as conducting a small farm, and had earned at various times as high as eighty cents per hour for his work and labor. He was fifty-eight years of age, and at the time of his death was employed as a concrete mixer at Clay, West Virginia. He was earning about $15.00 a month, together with meals, for about six months previous to his death (record p. 148). He was the father of five minor children ranging in ages from two to thirteen. The evidence further shows that he was incapacitated by the loss of his right hand. The evidence shows also, that his hospital bill was approximately $115.00 and that his funeral bill amounted to approximately $262.35, neither of which have been paid. Under all the circumstances, taking into consideration his physical condition, his earning capacity, and all other attendant facts, we feel that an award of four thousand dollars ($4,000.00) should be made to his estate, to be divided among his family on the basis of one-third to his wife and the remaining two-thirds to be divided among his five children and paid to a duly and legally appointed and qualified guardian.
Ira Mullins sustained serious abdominal injuries, the fracture of four ribs, injuries to his back and spine, a crushed breastbone and other injuries; was confined and treated in a hospital at Charleston for approximately a week, and as a result of the injuries was unable to perform his work as a sawyer for about twenty months. He was earning approximately $125.00 at the time of his injury. His wife, Rosa Mullins, suffered comparatively slight injuries, sustaining a cut on her head and injuries to her back, which, however, caused her to be confined in a hospital a little over a day, but according to her *218 testimony, incapacitated her for housework for a period of some three weeks. She also testified that she suffered severe pains.
Irene Mullins had a very serious laceration and cut on her leg, and suffered generally from the shock of the accident. She was confined in the hospital at Charleston for a period of over a month and may suffer in the future by reason of the injuries received. Dairl Mullins sustained a broken shoulder and broken collarbone and injuries to one of his kidneys, which injury may affect him in later fife. The hospital bills and doctors’ bills, together with the costs of the ambulance which conveyed the claimants from the scene of the accident to the city of Charleston, amounted to approximately $500.00; the loss of their furniture to approximately $100.00. Taking into consideration all the facts and circumstances surrounding the claims, and as indicated, charging Ira Mullins and his wife, Rosa Mullins, for some careless conduct in crossing the bridge at the time in question, and in mitigation of any amount of damages that would have been due and payable to them as compensation for their injuries, we feel that a fair allowance to Ira Mullins would be the sum of twenty-five hundred dollars ($2500.00); to his wife, Rosa Mullins, the sum of two hundred dollars ($200.00); and to Irene Mullins and Dairl Mullins, the infant children, aged twelve and ten years respectively, to whom no negligence could be charged, the sum of fifteen hundred dollars ($1500.00) each. The payment to the said Irene and Dairl Mullins of $1500.00 each is made on condition that a guardian shall be appointed and qualified by the court before such payment will be made.